UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————

In re:

INTEREST RATE SWAPS ANTITRUST
LITIGATION

———————————————————————

TRUEEX LLC,

                     Plaintiff,

         -v-

BANK OF AMERICA CORPORATION,
*et al.*,

                     Defendants.

———————————————————————

16-MD-2704 (JPO)

18-CV-5361 (JPO)

ORDER NO. 84

J. PAUL OETKEN, District Judge:

       Defendants NatWest Group plc, NatWest Markets plc, and NatWest Markets Securities Inc. (collectively "NatWest") move to disqualify Alan Mittleman, an expert witness for Platform-Plaintiff trueEx LLC ("trueEX"). (ECF No. 205 ("Mtn.").) In its letter motion (*id.*), and reply letter (ECF No. 214), as well as during the telephonic conference on July 2, 2025, NatWest argued that Mittleman should be disqualified because of his former employment and "confidential relationship" with Defendants Credit Suisse and NatWest. (*See* Mtn. at 1.)

       To succeed on a motion to disqualify an expert witness, a party must show that: "(i) the moving party held an objectively reasonable belief in the existence of a confidential relationship with the challenged expert; and (ii) during the relationship there was a disclosure of confidential or privileged information to the expert that is relevant to the current litigation." *Abraham v. Leigh*, No. 17-CV-5429, 2022 WL 1772488, at *1 (S.D.N.Y. June 1, 2022) (cleaned up). The Court may also consider the weight of public interest, taking into account factors like "judicial

integrity and fairness" balanced with "the party's right to the assistance of experts who possess specialized knowledge." *Auto-Kaps, LLC v. Clorox Co.*, No. 15-CV-1737, 2016 WL 1122037, at *2 (E.D.N.Y. Mar. 22, 2016). Ultimately, "instances of expert disqualification are rare," *Homeward Residential, Inc. v. Sand Canyon Corp.*, No. 12-CV-5067, 2019 WL 5634171, at *2 (S.D.N.Y. Oct. 31, 2019) (quotation marks omitted), and NatWest, as the moving party, "bears the burden of demonstrating why [Mittleman] should be disqualified," *In re New York City Policing During Summer 2020 Demonstrations*, No. 20-CV-8924, 2022 WL 656808, at *2 (S.D.N.Y. Mar. 4, 2022).

NatWest has failed to meet its burden here. While NatWest argues that Mittleman's past employment with two Defendants creates a conflict of interest in the present litigation (*see* Mtn. at 3-4), it fails to provide any specifics about what, if any, confidential information was ever shared with Mittleman that would be relevant to this case. And although NatWest cites two contractual provisions in Mittleman's separation agreements with itself and Credit Suisse to illustrate the allegedly ongoing confidential relationship between the parties (*see id.* at 2), those clauses more narrowly prevent Mittleman from "disparag[ing]" the company and require that he cooperate with company attorneys should there be an investigation into a matter on which he worked (*see* ECF No. 205-3 at 11, 13; ECF No. 205-6 at 5, 8). Mittleman's expert opinion cannot plausibly be read as disparaging either Defendant. Indeed, Mittleman only mentions NatWest and Credit Suisse to list his qualifications and past roles that permit him to speak as an expert witness, or to provide background on the relevant market practices. (*See* ECF No. 205-1 at 4, 11, 18, 42, 43.) And Mittleman has assisted with the factual investigation into his time at

NatWest, sitting for a deposition in 2018.[1] (*See* ECF No. 205-7.) Broadly reading such cooperation clauses to forever tie an individual to his past employer and prohibit him from serving as an expert witness in any suit related to his expertise developed during that employment would be unreasonably inhibiting.

Second, Mittleman's expert report is narrowly confined to his opinion on the commercial viability of trueEx's platform in 2013. (*See* ECF No. 205-1.) While Mittleman provides some background based on his experience in the interest rate swaps and fixed-income trading markets, he speaks in general terms and does not provide any details about NatWest's or Credit Suisse's business strategy or specific practices at issue in the present case. (*See id.*) Thus, even if Mittleman possesses specific confidential information that could be detrimental to the defense, he is not speaking to those matters. Rather, he is using the industry knowledge he developed as an employee at several financial institutions, including NatWest and Credit Suisse, to provide an expert assessment of whether a platform would have been viable in a competitive market.

Finally, public interest considerations counsel denying NatWest's motion for disqualification. Setting a standard where expert witnesses like Mittleman are disqualified precisely because of their experience in the exact market at issue would unfairly hamstring plaintiffs. And interpreting broad contractual obligations like the ones NatWest and Credit Suisse included in Mittleman's separation agreements to prevent him from offering expert testimony on a narrow topic not directly related to Defendants' specific dealings would

---

[1] Although NatWest raises concerns over the 2018 deposition it conducted of Mittleman about his past employment (Mtn. at 2), the transcript of that deposition confirms that Mittleman was a relatively minor fact witness who spoke mostly about the relationships of various players in the interest rate swaps market (*see* ECF No. 205-7). There is no mention or implication of any confidential information Mittleman possessed, nor any indication that NatWest intended to use Mittleman as a key part of its defense. (*See id.*)

encourage financial institutions to include these provisions and wield them to prevent the most experienced individuals from ever becoming expert witnesses. Such an outcome would limit the efficacy of expert witness testimony when a court may most benefit from it—such as in highly technical cases like this one.

The Court concludes that NatWest has failed to meet its burden of showing that Mittleman is an improper expert witness to speak on the narrow issue of TrueEx's predicted viability. Defendants' motion to disqualify Alan Mittleman is therefore DENIED.

The Clerk of Court is directed to close the motions at Docket Numbers 204 and 205 in case number 18-cv-5361, to close the motions at Docket Numbers 1120 and 1121 in case number 16-md-2704, and to docket this order under those two case numbers.

SO ORDERED.

Dated: July 14, 2025
New York, New York

_____
J. PAUL OETKEN
United States District Judge